IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**HOPE R. DOMINGUEZ,**

      **Plaintiff,**

    **vs.**                                                                                               **Civ. No. 21-286 JFR**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security Administration,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 18) filed September 7, 2021, in connection with Plaintiff Hope R. Dominguez's *Motion to Reverse and Remand, with Supporting Memorandum* ("Motion") (Doc. 21), filed November 9, 2021. The Commissioner filed a response on February 10, 2022. Doc. 25. Plaintiff informed the Court that briefing was complete and that her Motion was ripe for decision on June 22, 2022. Doc. 28. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's Motion is not well-taken. Therefore, it is **DENIED**, and the final decision of the Commissioner is **AFFIRMED.**

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment in this case. Docs. 6, 11, 12.

## I. BACKGROUND

Plaintiff alleges she became disabled on November 10, 2016, due to back injury, blind or low vision, drug-induced anxiety, fibromyalgia, nerve palsy, post-traumatic stress disorder, and surgery to her left ankle. Tr. 38, 98. She completed two years of college in May 2013, and prior to that worked in retail and payroll, and as an office manager. Tr. 345-46. Plaintiff last worked in December 2009. Tr. 346.

On February 8, 2018, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1381, *et seq.*[2] Tr. 310. Her application was denied on August 14, 2018. Tr. 182. Plaintiff's application was again denied at reconsideration on March 27, 2019. Tr. 194. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held telephonically[3] before ALJ Lillian Richter on July 30, 2020. Tr. 36, 199. Plaintiff appeared at the hearing with Attorney Feliz M. Martone.[4] Tr. 34. ALJ Richter received testimony from Plaintiff and a vocational expert ("VE"). Tr. 34-35. On November 4, 2020, ALJ Richer issued an unfavorable decision. Tr. 10-12. Plaintiff requested review of the decision by the Appeals Council on January 4, 2021. Tr. 430. The Appeals Council issued its decision denying Plaintiff's request for review on March 4, 2021, rendering the ALJ's unfavorable decision the final decision of the Commissioner. Tr. 1; *see Naud v. Astrue*, 870 F. Supp. 2d 1183, 1185 (D. Colo. 2012) ("The Appeals Council's denial of review means that the ALJ's decision becomes the final decision of the Commissioner."). On

---

[2] Plaintiff also applied for Disability Insurance Benefits under Title II of the Act, 42 U.S.C. § 401, *et seq.*, but later withdrew that application. Tr. 38.

[3] The hearing was held telephonically due to the COVID-19 pandemic. Tr. 13.

[4] Ms. Martone also represents Plaintiff in the instant proceedings. Doc. 1 at 2.

2

March 29, 2021, Plaintiff timely filed a Complaint in this Court seeking judicial review of the Commissioner's final decision.  Doc. 1.

## II. APPLICABLE LAW

**A.     Disability Determination Process**

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial work activity is work activity that involves doing significant physical or mental activities," even when it is performed less often, for less money, or with less responsibility, than in the past.  20 C.F.R. § 404.1572(a). "Gainful work activity is work activity" done "for pay or profit. . . . [I]t is the kind of work usually done for pay or profit, whether or not a profit is realized."  20 C.F.R. § 404.1572(b). To determine whether a person satisfies this criteria, the Commissioner has adopted the familiar five-step sequential analysis as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have impairment(s) or a combination of impairments that is severe and meets the duration requirement, she is not disabled.
>
> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.
>
> (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases.  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [her physical and mental] limitations."  20 CFR § 404.1545(a)(1).  This is called the claimant's

residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of a claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* "'[W]ork which exists in the national economy' means works which exists in significant numbers either in the region where [the claimant] lives or in several regions in the country." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 416.966(a). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Hum. Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

**B.     Standard of Review**

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hamlin*, 365 F.3d at 1214 (internal quotation marks and citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a

4

mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (internal quotation marks and citation omitted). Likewise, "[e]vidence is not substantial if it . . . constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The reasons underlying the ALJ's decision must be "articulated with sufficient particularity to allow for judicial review." *Gorian v. Colvin*, 180 F. Supp. 3d 863, 868 (D.N.M. 2016). Further, the ALJ's decision must "apply the correct legal standard" and supply "a sufficient basis to determine that appropriate legal standards have been followed." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (internal quotation marks and citation omitted). The Court does not "reweigh the evidence" or impose its judgment in place of the Commissioner's. *Hamlin*, 365 F.3d at 1214 (internal quotation marks and citation omitted).

### III. ANALYSIS

**A.     The ALJ's Findings of Fact and Conclusions of Law**

The ALJ made her decision that Plaintiff was not disabled at step five of the sequential evaluation. Tr. 25-26. She determined that Plaintiff's date last insured under the Act was September 30, 2015, and that Plaintiff had not engaged in substantial gainful activity since her application date. Tr. 16. The ALJ found that Plaintiff's severe impairments were anxiety disorder, bicipital tendinitis and mild impingement syndrome of the right upper extremity, fibromyalgia with cervicalgia and dorsalgia, injury of brachial plexus in the right upper extremity, major depressive disorder, migraine headaches, moderate persistent asthma, and somatic symptom disorder, and that Plaintiff's non-severe impairments were diabetes mellitus and hypertension. Tr. 16. Further, she found that Plaintiff had a moderate limitation in adapting

or managing oneself, concentrating, persisting, or maintaining pace, interacting with others, and understanding, remembering or applying information. Tr. 18-19. The ALJ determined none of Plaintiff's impairments, standing alone or combined, met or medically equaled in severity one of the impairments listed in the governing regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 17. Accordingly, she proceeded to step four of the sequential evaluation and found that Plaintiff had the RFC

> to perform work at the light exertional level as defined in 20 C[.]F[.]R[.] 416.967(b). She can occasionally reach overhead and can frequently reach in all other directions bilaterally. She can occasionally balance, and can never climb ladders, ropes, or scaffolds. [Plaintiff] should avoid exposure to extreme heat, extreme cold, unprotected heights, hazardous machinery, and concentrated exposure to dust, odors, fumes, and pulmonary irritants. [Plaintiff] can perform simple, routine work, can remain on task for two hours at a time, and can make simple work-related decisions in a workplace with few changes in the routine work setting. She can have occasional interaction with coworkers and supervisors and no interaction with the public.

Tr. 19-20. The ALJ determined that Plaintiff could not perform any of her past relevant work, and thus proceeded to step five of the sequential evaluation. Tr. 25-26. There, based upon the testimony of the VE, the ALJ found that Plaintiff could work as a Collator Operator,[5] with approximately 44,000 positions existing in the national economy, or a Warehouse Checker,[6] with approximately 5,000 positions existing in the national economy. Tr. 26. The ALJ found that these two occupations amount to "work that exists in significant numbers in the national economy." Tr. 27. Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. Tr. 27.

As the basis of her Motion, Plaintiff posits two claims of error on the part of the ALJ. First, Plaintiff argues that, in crafting Plaintiff's RFC, the ALJ did not consider Plaintiff's

---

[5] Dictionary of Occupational Titles ("DOT") 208.685-010, 1991 WL 671753 (Jan. 1, 2016) ("Collator Operator").

[6] DOT 222.687-010, 1991 WL 672130 (Jan. 1, 2016) ("Checker I").

moderate limitation in concentrating, persisting, or maintaining pace or explain why such a discussion was omitted.  Doc. 21 at 6-8.  Next, Plaintiff argues that the ALJ failed to discuss whether the number of jobs available to Plaintiff as a Collator Operator and a Warehouse Checker actually constitutes a "significant number" as the applicable statute demands.  Doc. 21 at 8-10; *see* 42 U.S.C. § 423(d)(2)(A).  The Commissioner counters both of Plaintiff's arguments, maintaining that the RFC crafted by the ALJ and the jobs she found Plaintiff capable of performing reasonably accommodate for Plaintiff's moderate limitations, and that the ALJ's finding with respect to the numerical significance of the aforementioned jobs is legally sound, as is it supported by substantial evidence.  Doc. 25 at 13-18.  For the reasons that follow, the Court agrees with the Commissioner in both respects.  Plaintiff's arguments are addressed in turn below.

**B.     Legal Standards**

    *1.     RFC Assessment*

A claimant's "RFC is an administrative finding of what an individual can do despite his or her limitations."  *Spicer v. Barnhart*, 64 F. App'x 173, 175 (10th Cir. 2003).   The "ALJ's RFC must be based on the entire case record, including the objective medical findings and credibility of the claimant's subjective complaints."  *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009).  In assessing a claimant's RFC, "the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe."  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis omitted); *see also* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  This assessment must be "based on all of the relevant and other evidence" in the record. C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  "'If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.'"

*Sullivan v. Colvin*, 519 F. App'x 985, 988 (10th Cir. 2013) (alterations omitted) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).

Lastly, but "most importantly, the ALJ's 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence.'" *Wells*, 727 F.3d at 1065 (omission omitted) (quoting SSR 96-8p, 1996 WL 374184, at *7). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion with citations to specific medical facts and nonmedical evidence, the Court will conclude that his RFC assessment is not supported by substantial evidence. *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003). In sum, the ALJ's decision must be "sufficiently articulated so that it is capable of meaningful review." *Spicer*, 64 F. App'x at 177-78.

   2.  *Limitations from Mental Impairments*

A claimant's limitations from mental impairments are evaluated on a five-point rating scale, ascending in severity: "none, mild, moderate, marked, and extreme." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(F)(2). "[A] moderate limitation exists where a claimant's functioning on a sustained basis is only fair." *Jaramillo v. Saul*, No. 19-CV-488, 2020 WL 6781789, at *4 (D.N.M. Nov. 18, 2020) (internal quotation marks and citation omitted). "[T]he key consideration when determining whether an RFC properly accounts for a claimant's limitations is whether or not that RFC permits the claimant to perform the abilities in question despite the established limitations." *Id.* at *5. An ALJ may properly account for a claimant's moderate limitations in the RFC "by limiting the claimant to particular kinds of work activity." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015)).

       3.     *Significant Number of Jobs in the National Economy*

In the Tenth Circuit, what constitutes a "significant number[]" of jobs, as that term is used in 42 U.S.C. § 423(d)(2)(A), is not established by a "bright line." *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).  Rather, "each case should be evaluated on its individual merits." *Id.*  Proper analysis of the question of what amounts to numerical significance does not involve "judicial line-drawing" and "entails many fact-specific considerations requiring individualized evaluation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004).  Finally, "and, most importantly, . . . the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* (internal quotation marks and citation omitted).

**C.**     **The ALJ Adequately Accounted for Plaintiff's Moderate Limitation in Concentrating, Persisting, or Maintaining Pace in the RFC**

The following finding from the ALJ is at issue here:

> [Plaintiff] reported difficulty concentrating, stating that she found it difficult to complete tasks in a timely fashion.  Though the consultative examiner noted that she demonstrated mild distractibility, [Plaintiff]'s concentration was measured as 5/5. [Plaintiff] often demonstrated normal concentration and attention throughout the record and was able to perform activities that show sufficient attention and concentration to do simple tasks and more, such as performing her activities of daily living, counting change, managing finances, performing household chores, shopping in stores, preparing meals, taking care of her grandchildren, driving, and navigating public transportation.  Considering these facts, [Plaintiff]'s ability to concentrate, persist, or maintain pace is moderately limited.

Tr. 19 (internal citations omitted).  Plaintiff does not take issue with this finding or the record evidence relied upon by the ALJ to reach to make it.  *See* Doc. 21 at 7-8.  Rather, Plaintiff's sole contention is that the ALJ did not account for this finding while crafting the RFC or otherwise explain its omission.  Doc. 21 at 7.  Plaintiff is particularly concerned with the VE's testimony that unscheduled breaks throughout the workday forestall competitive employment.  Doc. 21 at 8; *see* Tr. 69-71.

9

In addition to Plaintiff's testimony at the hearing, the ALJ relied on Plaintiff's Mental Status Examination conducted by Dr. Orlando Ortiz on May 6, 2018, at New Mexico Consultative Examinations in making her finding above.  Tr. 19 (citing Tr. 41-64 (Plaintiff's Hearing Testimony), 509-10 (Mental Status Examination)).  Dr. Ortiz summarized Plaintiff's mental abilities as follows:

| Area | Difficulty |
|---|---|
| **Understand and Remember** | |
| • Complex instructions | Mild |
| • Simple instructions | None |
| **Social Interaction** | |
| • Ability to interact with the public | Mild |
| • Ability to interact with peers at work | Mild |
| **Continued Concentration and Task Completion** | |
| • Ability to complete instructions | None |
| • Ability to concentrate | Moderate |
| • Ability to persist at tasks | Moderate |
| • Ability to work without supervision | None |
| **Adaptation** | |
| • Ability to adapt to changes at work | Mild |
| • Ability to use public transportation | None |
| • Ability to manage money | None |
| • Ability to adapt to home environment | None |

Tr. 510.  Dr. Ortiz also offered a narrative assessment which provided, in pertinent part, that Plaintiff was "likely to experience some difficulty with concentration and persisting at tasks given her observed deficiencies in attention during [this] encounter.  She would also likely struggle with interpersonal relationships and completing complex instructions."  Tr. 510.

The Court looks to three cases from the United States Court of Appeals for the Tenth Circuit to begin its analysis here.  In *Smith*, a doctor opined that the claimant had a moderate limitation in her ability to

> maintain concentration, persistence, and pace, remain attentive and keep concentration for extended periods, work with others without getting distracted, complete a normal workday and workweek without interruption for psychologically based systems, perform at a consistent pace without excessive rest periods, accept instructions and respond appropriately to criticism by supervisors, get along with coworkers or peers without distracting them or engaging in behavioral extremes, respond appropriately to changes in the workplace, and set realistic goals or independently plan.

821 F.3d at 1268.  Based on this limitation, the doctor concluded that the claimant could perform work of limited complexity and manage infrequent interactions with others.  *Id.*  The ALJ, in assessing the claimant's RFC, determined that she "could not engage in face-to-face contact with the public and . . . could engage in only simple, repetitive, and routine tasks." *Id.* at 1269.  In appealing the ALJ's conclusion that she was not disabled, the claimant alleged, *inter alia*, that the ALJ failed to include her moderate limitations from her mental impairments in the RFC assessment.  *Id.* at 1268.  Relying on *Vigil*, 805 F.3d at 1204, and *Lee v. Colvin*, 631 F. App'x 538, 540-42 (10th Cir. 2015), the Tenth Circuit held that the ALJ did indeed accomplish inclusion of the claimant's moderate limitations from mental impairments in the RFC "by stating how the claimant was limited in her ability to perform work-related activities." *Smith*, 821 F.3d at 1269. It continued: "This approach is acceptable in our circuit, for we have held in a published opinion that an [ALJ] can account for moderate limitations by limiting the claimant to particular kinds of work activity."  *Id.* (citing *Vigil*, 805 F.3d at 1204); *see also Parker v. Comm'r, SSA*, 772 F. App'x 613, 616 (10th Cir. 2019) ("[W]e have held that the [ALJ] can sometimes account for mental limitations by limiting the claimant to particular kinds of work."); *Mahboub v. Saul*, No. 19-CV-1216, 2021 WL 2209888, at *13 (D.N.M. June 1, 2021) (finding that *Smith* reinforced the relevant holding in *Vigil*).  This standard is instructive.

Plaintiff's statements that "[t]he ALJ made no link at step four [of the sequential evaluation] between the moderate limitations in concentrating, persisting, or maintaining pace

11

and the RFC" and that she "d[id] not discuss any time off task, or other restrictions to account for these limitations" are simply unsupported by the record. Doc. 21 at 8. Indeed, the RFC crafted by the ALJ, outlined in its entirety above, offered restrictions on the work Plaintiff can accomplish given her mental limitations: "[Plaintiff] can perform simple, routine work, can remain on task for two hours at a time, and can make simple work-related decisions in a workplace with few changes in the routine work setting." Tr. 20. The demands of "unskilled" (or simple) work are: "Understanding, remembering, and carrying out simple instructions. Making judgments commensurate with unskilled work—i.e., simple work-related decisions. Responding appropriately to supervision, coworkers, and usual work situations. Dealing with changes in a routine work setting." SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996).

It is true, as indicated by the qualifying language used in *Vigil*, *Smith*, and their progeny, that an ALJ will not always be able to account for a claimant's mental limitations by simply cabining them to particular classes of work. *Vigil*, 805 F.3d at 1204; *Smith*, 821 F.3d at 1269; *see, e.g.*, *Parker*, 772 F. App'x at 616. In fact, this Court has found certain cases distinguishable from those above, such that this principle does not apply. *See, e.g.*, *Garza v. Saul*, No. 19-CV-699, 2020 WL 5518837, at *13 (D.N.M. Sept. 14, 2020) (noting that *Vigil* and *Smith* did not address a moderate limitation in the "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, which is a limitation not assumed in unskilled or simple work"); *Fatheree v. Saul*, No. 19-CV-704, 2020 WL 3448082, at *10-11 (D.N.M. June 24, 2020) (distinguishing *Vigil* and *Smith* from the situation at issue because, among other things, the ALJ found that in addition to "simple" tasks, the claimant could also perform "some detailed tasks"). But this is not one of those cases, and Plaintiff offers no argument and points to no portion of the record that demonstrates that it is. The Court, therefore,

is satisfied that the ALJ adequately accounted for Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace by limiting her to unskilled work.

The aspect of Plaintiff's argument that centers on the need for unscheduled breaks throughout the workday is a red herring and does not alter the Court's analysis. Doc. 21 at 8. First, a full review of the transcript of the hearing reveals that the ALJ's hypothetical questions to the VE concerning the availability of prolonged breaks to an individual came in the context of *physical*, rather than mental, impairments. Tr. 69-71. Nevertheless, to the extent this testimony bears on Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace, the Court examines Plaintiff's argument in some detail. The VE testified that "employers allow . . . breaks typically that occur every two hours during the course of the eight[-]hour work day." Tr. 70. When asked about individuals "not able to remain on task for two hours," the VE reiterated that "employers require the competitive worker to be able to work at least two hours at a time before any given break." Tr. 70.

Plaintiff cites to no evidence that provides an estimate of how long Plaintiff can work before needing a break in light of her moderate limitation in concentrating, persisting, or maintaining pace, and the Court's comprehensive review of the record has not revealed such evidence,[7] aside from that outlined above from the Mental Status Examination conducted by Dr. Ortiz. *See* Tr. 510. The Court again looks to *Vigil* for direction. In reaching its holding that the ALJ "can account for moderate limitations by limiting the claimant to particular kinds of work activity," the Tenth Circuit noted that, in the performance of unskilled (or simple) work, an individual is expected "to maintain attention for extended periods of two-hour segments but . . .

---

[7] Plaintiff participated a Consultative Psychiatric Examination with Dr. Paula Hughson on March 4, 2019. Tr. 778. As relevant here, Dr. Hughson noted that Plaintiff was "[a]ble to attend and concentrate for purposes of the interview." Tr. 779.

concentration *is* '*not critical*.'" *Vigil*, 805 F.3d at 1204 (quoting Social Security Administration Program Operations Manual System ("POMS") Disability Insurance ("DI") § 25020.010(B)(3)(d)[8] (emphasis added).  This aligns with the ALJ crafted by the RFC in this case, which provided that Plaintiff "can remain on task for two hours at a time." Tr. 20.  Plaintiff offers no basis the Court can use to assign error to this finding, as she limits her contention to a single sentence.  Doc. 21 at 8.

For these reasons, the Court is satisfied that the ALJ adequately accounted for Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace in the RFC, and shifts focus to her remaining claim of error: whether the work the ALJ found she could perform actually exists in substantial numbers.

**D.      The ALJ's Conclusion that a Significant Number of Jobs Exist in the National Economy that Plaintiff Can Perform is Supported by Substantial Evidence**

As noted above, the ALJ found that Plaintiff could work as a Collator Operator, with approximately 44,000 positions existing in the national economy, or a Warehouse Checker, with approximately 5,000 positions existing in the national economy, and that these two occupations amounted to "work that exists in significant numbers in the national economy." Tr. 26-27.  Plaintiff argues that the ALJ was required to conduct an analysis under the factors set forth in *Trimiar*, 966 F.2d at 1330, "to determine whether these jobs represent a significant number as a matter of fact as applied to [Plaintiff]" because, in her view, "the jobs identified nationally are low." Doc. 21 at 9.  For the reasons that follow, Plaintiff's argument fails.

---

[8]*Program Operations Manual System (POMS)*, Social Security Administration, https://secure.ssa.gov/psoms.nsf/lnx/0425020010 (last visited Jul. 28, 2022).  Reviewing courts afford deference to SSA's "interpretations stated in the POMS unless they are 'arbitrary, capricious, or contrary to law.'" *Lee v. Colvin*, 631 F. App'x 538, 541 n.1 (10th Cir. 2015) (quoting *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999)).

*Trimiar* listed "several factors" borrowed from the United States Court of Appeals for the Eighth Circuit that "go into the proper evaluation of significant numbers." 966 F.2d at 1330 (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)). In subsequent cases, the Tenth Circuit has offered guidance on when those factors apply. In *Raymond v. Astrue*, the claimant argued "that the ALJ should have engaged in a multi-factor analysis to assess whether there are significant jobs in the regional economy." 621 F.3d 1269, 1274 n. 2 (10th Cir. 2009). In rejecting this argument, then-Circuit Judge Neil Gorsuch provided this summary:

> [T]his is not what *Trimiar* requires. Like our other cases, the Court in *Trimiar* indicated that the relevant test is *either* jobs in the regional economy *or* jobs in the national economy. In *Trimiar* the focus was on jobs in the regional economy because the [VE] in that case testified *only* to the number of available jobs in the *regional* economy. Because the number of such jobs was between 650 and 900, and because this circuit has never drawn a bright line establishing the number of jobs necessary to constitute a significant number, the court turned to the multi-factor analysis to help it resolve the question whether 650 to 900 jobs is a significant number. *Trimiar* does *not* hold that only regional jobs are relevant or that a court must engage in a factoral analysis when the number of jobs relevant available is . . . much larger.

*Id.* (internal quotation marks and citations omitted). This District has taken this direction to mean "that the *Trimiar* analysis does not extend to the question of whether there are significant numbers of *nationally* available jobs." *Rodriguez v. Berryhill*, No. 16-CV-1059, 2018 WL 1627209, at *5 (D.N.M. Mar. 31, 2018) (internal quotation marks and citation omitted). Indeed, "the multi-factorial analysis required by *Trimiar* focuses on factors relevant in analyzing the true availability of local job opportunities on a more particularized inquiry as to the specific claimant under consideration." *Id.* (alteration, internal quotation marks and citation omitted). "Thus, where the focus is on the national availability of jobs[,] the particularized *Trimiar* inquiry would confuse the issues." *Id.* (alteration, omission, internal quotation marks, and citation omitted). The Court is guided by this standard.

Here, the VE testified that "within the national economy, there are 44,000 jobs" as a Collator Operator, and "[w]ithin the national economy, there are 5,000 jobs" as a Warehouse Checker. Tr. 66-68. Accordingly, because only work within the national economy is at issue here, the Court will not remand this case on this issue in order for the ALJ to conduct a *Trimiar* analysis as Plaintiff requests, but will instead decide if substantial evidence supports the ALJ's determination that Plaintiff was "capable of making a substantial adjustment to other work that exist[ed] in significant numbers in the national economy." Tr. 27; *see Mares v. Berryhill*, No. 18-CV-4, 2019 WL 1085193, at *4-5 (D.N.M. Mar. 7, 2019) (declining to remand for a *Trimiar* analysis where the number of jobs in the national economy was at issue, and focusing instead on whether the ALJ's determination at step five of the sequential evaluation was supported by substantial evidence); *see also Rodriguez*, 2018 WL 1627209, at *6 (clarifying that, when *Trimiar* does not apply, it "does not mean that an ALJ's findings regarding the number of jobs existing in the national economy is beyond scrutiny" because "the issue remains as to whether the ALJ's finding is supported by substantial evidence").

In *Mares*, the VE testified that a hypothetical individual with the same characteristics as the claimant "could perform the duties of a table worker, document preparer, and addresser." 2019 WL 1085193, at * 4. The VE further testified that, taken together, these three occupations totaled 55,900 jobs in the national economy. *Id.* In light of this testimony, the ALJ determined "that these jobs existed in significant numbers in the national economy." *Id.* The claimant appealed, arguing, *inter alia*, "that the total number of jobs is so borderline to a significant number that the ALJ was required to conduct a *Trimiar* analysis, which she did not do." *Id.* Plaintiff echoes this argument in the instant case, and the Court rejects it.

In upholding the ALJ's determination that 55,900 jobs in the national economy was numerically significant, *Mares* offered a survey of what various circuits, including the Tenth Circuit, and this District deem satisfy 42 U.S.C. § 423(d)(2)(A)'s call for "significant numbers." It noted that in *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014), the Ninth Circuit held that 25,000 jobs adequately answered this call, in *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997), the Eighth Circuit held that 30,000 jobs did the same, and likewise, in *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009), this Court's home circuit "implicitly found 11,000 nationally available jobs to be a significant number." *Mares*, 2019 WL 1085193, at *5. Further, in *Rodriguez*, 2018 WL 1627209, at *5-6, a total of 55,600 jobs was found to suffice, in *Garcia v. Berryhill*, No. 16-CV-1266, 2018 WL 1620922, at *5-6 (D.N.M. Mar. 31, 2018), a total of 17,600 jobs was found to suffice, in *King v. Berryhill*, No. 16-CV-1147, 2018 WL 851358, at *12-14 (D.N.M. Feb. 12, 2018), a total of 47,500 jobs was found to suffice. *Mares*, 2019 WL 1085193, at *5. Likewise, in *Padilla v. Berryhill*, No. 16-CV-106, 2017 WL 3412089, at *11-12 (D.N.M. Mar. 28, 2017), an aggregate of 27,000 jobs in the national economy was deemed sufficient. *Padilla* relied on the Tenth Circuit's holding in *Rogers*, mentioned above, and its holding *Botello v. Astrue*, 376 F. App'x. 847, 849-51 (10th Cir. 2010): "The *Botello* court . . . upheld the ALJ's significant numbers ruling based solely on the number of jobs the VE identified as available in the national economy." 2017 WL 3412089, at *12.

In light of the foregoing, the Court concludes that ALJ's determination with respect to Plaintiff's ability to adjust to jobs that existed in numerical significance in the national economy is supported by substantial evidence. The ALJ gave due consideration to the VE's testimony and, as relevant here, found it consistent with the information supplied by the DOT. Tr. 27. This testimony—that the two occupations Plaintiff was capable of performing represented 49,000 jobs

in the national economy—offered a number well within the range what has repeatedly been found to constitute "significant numbers" under 42 U.S.C. § 423(d)(2)(A). Therefore, the Court will not disrupt the ALJ's judgment on this issue.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is **DENIED**. The Court thereby **AFFIRMS** the final decision of the Commissioner.

**IT IS SO ORDERED.**

_____
**JOHN F. ROBBENHAAR**
United States Magistrate Judge,
Presiding by Consent
